FILED
2025 Feb-13 PM 01:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| ROGER HYATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-01407-NAD |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER
## AFFIRMING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Roger Hyatt appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") on his claim for supplemental security income benefits. Doc. 1. Plaintiff Hyatt applied for benefits with an alleged onset date of April 26, 2021. Doc. 17 at 2–3. The Commissioner denied Hyatt's claim for benefits. Doc. 17 at 3. In this appeal, the parties consented to magistrate judge jurisdiction. Doc. 11; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **AFFIRMS** the Commissioner's decision.

## ISSUE FOR REVIEW

In this appeal, Hyatt argues that substantial evidence does not support the

1

decision of the Administrative Law Judge (ALJ) because the ALJ failed to articulate valid reasons for not fully crediting Hyatt's subjective testimony that he can no longer perform medium work.  Doc. 14 at 15.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To qualify for disability benefits, a claimant must show disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505.

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages:   (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the

administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled.  The ALJ must determine the following:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    if not, whether the claimant has a severe impairment or combination of impairments;

(3)    if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)    if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and,

(5)    if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211.  At step five of the inquiry, the burden temporarily shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner makes that showing, the burden then shifts back to the claimant to

show that he cannot perform those jobs. *Id.* So, while the burden temporarily shifts to the Commissioner at step five, the overall burden of proving disability always remains on the claimant. *Id.*

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act. The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.** With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the

Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "The ALJ must rely on the full range of evidence . . . , rather than cherry picking records from single days or treatments to support a conclusion." *Cabrera v. Commissioner of Soc. Sec.*, No. 22-13053, 2023 WL 5768387, at *8 (11th Cir. Sept. 7, 2023).

**B.**     With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. And the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## BACKGROUND

### A.    Procedural background

Hyatt filed a prior application for benefits in 2017, which the Commissioner

denied.  *See* Doc. 5-4.

On May 19, 2021, Hyatt filed an application for supplemental security income benefits (SSI), alleging disability beginning April 26, 2021.  Doc. 17 at 2–3.  Hyatt's application was denied at the initial level (and on reconsideration).  Doc. 17 at 3.  Following the initial denial of his claim, Hyatt requested a hearing before an ALJ.  Doc. 5-3 at 18.  After Hyatt agreed to appear by telephone, the ALJ held a telephonic hearing on April 12, 2023.  Doc. 5-3 at 18.  On July 28, 2023, the ALJ issued an unfavorable decision.  Doc. 17 at 3.

The Appeals Council denied Hyatt's request for review.  Doc. 5-3 at 2.  Because the Appeals Council found no reason to review the ALJ's decision, the ALJ's decision became the final decision of the Commissioner on October 6, 2023.  Doc. 5-3 at 2; *see* 42 U.S.C. § 405(g).

### B.    Factual background and ALJ hearing

Hyatt was born on June 5, 1964.  Doc. 5-3 at 39.

On March 30, 2021, Hyatt presented to the emergency room at Gadsden Regional Medical Center with a "crush injury" after "a fork lift rolled and pinned [Hyatt] up against a motor of a truck for approx[imately] 10 minutes."  Doc. 5-9 at 15.  Computer Tomography (CT) reports revealed a "Grade IV left renal injury with active extravasation and an associated hematoma," "Questionable grade I/II injury of the lateral spleen," and "acute fractures of the right 12th and left 7th, 9th, and 10th

ribs," "extensive coronary artery calcifications," and "emphysema." Doc. 5-9 at 12, 14. Radiology reports of Hyatt's chest revealed mild emphysema, "acute fracture of the 7th left rib," and "no acute cardiopulmonary abnormality." Doc. 5-9 at 18. Radiology reports of Hyatt's pelvis revealed "no acute fracture or dislocation" and "degenerative disc disease in the lower lumbar spine." Doc. 5-9 at 20. Hyatt was transported via helicopter from Gadsden Regional Medical Center to the trauma bay in the emergency department at UAB Hospital. Doc. 5-9 at 17.

Hyatt was admitted to UAB Hospital on March 30, 2021, and discharged on April 14, 2021. Doc. 5-9 at 22. Discharge summaries show that Rogers was admitted for tachycardia, rib fractures, injury to the left kidney, multiple traumatic injuries, history of COPD, and acute pain due to trauma. Doc. 5-9 at 22. A surgical pathology report shows that Hyatt's spleen was removed on April 1, 2021. Doc. 5-9 at 27.

On April 18, 2021, Hyatt presented to the Ascension St. Vincent's Blount Emergency Department for a post-surgical wound check. Doc. 5-9 at 125. Hyatt reported no problems, but Hyatt's wife wanted to be sure that Hyatt's post-surgical drain was working properly. Doc. 5-9 at 128.

On April 26, 2021, Hyatt was admitted to UAB Hospital for abscess of spleen, chronic obstructive pulmonary disease, current tobacco use, hemopneumothorax, and personal history of recent trauma. Doc. 5-9 at 150. Discharge summaries show

that Hyatt was discharged from UAB Hospital on May 7, 2021.  Doc. 5-9 at 150.

On May 25, 2021, Hyatt received the Pneumovax 23 and Menveo vaccines at the Kirklin Clinic at UAB.  Doc. 5-9 at 227.

On June 29, 2021, Hyatt presented for an office visit with Quality of Life Health Services.  Doc. 5-9 at 6.  Hyatt was positive for shortness of breath, chest pain, abdominal pain, arthralgias, and back pain.  Doc. 5-9 at 6.  Hyatt reported that he had a "[b]ad accident 2 months ago" resulting in a collapsed lung and broken ribs, and that he was losing vision in his left eye.  Doc. 5-9 at 6.

On July 8, 2021, Hyatt visited the J.W. Stewart Neighborhood Health Center with Quality of Life Health Services.  Doc. 5-9 at 3.  Hyatt was "[p]ositive for arthralgias, back pain, gait problems, and myalgias."  Doc. 5-9 at 3.  During that visit, Hyatt's problems with neuralgia and neuritis, adjustment insomnia, and chronic pain syndrome were addressed.  Doc. 5-9 at 4.

On November 20, 2021, Hyatt underwent a social security disability consultative examination with Dr. Michael Tanael.  Doc. 5-9 at 233.  Hyatt's chief complaints were hypertension, weakness, and back pain.  Doc. 5-9 at 233.  Hyatt reported difficulty standing, sitting, and walking, and he reported that he could handle cooking/meal prep, personal care, housekeeping and laundry, shopping/banking, but that he had difficulty driving.  Doc. 5-9 at 233.  Dr. Tanael reported normal range of motion in Hyatt's cervical spine, lumbar spine, shoulders,

8

elbows, wrists, hands, hips, knees, ankles, and great toes.  Doc. 5-9 at 235–237.  Dr. Tanael reported that Hyatt was unable to walk on toes and heels, had difficulty squatting and rising, and had difficulty getting on and off the exam table.  Doc. 5-9 at 237.  Dr. Tanael reported Hyatt's reflexes as normal and reported a slight reduction in strength (4 out of 5) in Hyatt's left and right upper and lower extremities.  Doc. 5-9 at 235.

On March 10, 2022, Hyatt visited the J.W. Stewart Neighborhood Health Center with Quality of Life Health Services for a follow-up visit.  Doc. 5-10 at 15.  The visit diagnoses included "chronic pain syndrome," "neuralgia and neuritis," and "nicotine dependence."  Doc. 5-10 at 15.

On June 16, 2022, Hyatt visited the J.W. Stewart Neighborhood Health Center with Quality of Life Health Services seeking a prescription refill request for his hypertension medication.  Doc. 5-10 at 12–13.  Progress notes show that "all other systems [were] reviewed and are negative."  Doc. 5-10 at 13.

On November 15, 2022, Hyatt visited the Etowah Free Clinic.  Doc. 5-10 at 23.  Hyatt also received a dilitiazem refill.  Doc. 5-10 at 23.  At this visit, Hyatt also reported that he had limited vision in his right eye.  Doc. 5-10 at 26.

On December 12, 2022, Hyatt visited the Etowah Free Clinic for a lesion on his wrist.  Doc. 5-10 at 25.

Hyatt received dilitiazem refills on December 12, 2022, January 12, 2023,

February 13, 2023, and March 13, 2023, from the Etowah Free Clinic.  Doc. 5-10 at 23–24.

On March 22, 2023, Hyatt visited the Etowah Free Clinic for chest pain.  Doc. 5-10 at 20.  Hyatt was advised to stop smoking and to go to the emergency room if the chest pain became more frequent.  Doc. 5-10 at 20.

On April 10, 2023, the Etowah Free Clinic dispensed dilitiazem to Hyatt. Doc. 5-10 at 19.

On April 12, 2023, the ALJ held a telephonic hearing on Hyatt's application for SSI benefits.  Doc. 5-3 at 35.

Hyatt testified that in 2021, while "pulling a motor," Hyatt "got out the tie strap of the motor and it rolled up and the fork pinned [him] against the motor."  Doc. 5-3 at 45.  Hyatt testified that he was crushed, and as a result he had his spleen removed, hurt his lower back, and "broke eight ribs on one side [and] one [rib] on the other."  Doc. 5-3 at 45–46.  Hyatt testified that he has not worked since that injury.  Doc. 5-3 at 45.

Hyatt also testified that he has "not really" healed from his injuries, and that he continues to have pain in his "butt, back, low back, [and] ribs."  Doc. 5-3 at 47. Hyatt testified that because of the back pain he has trouble walking and bending over, is unsteady on his feet, and has numbness in his legs.  Doc. 5-3 at 48.  Hyatt testified that he has pain in his side and has swelling on his stomach from his surgery.

Doc. 5-3 at 48–49.  Hyatt also testified that he has "headaches all the time" and experiences ankle pain and loss of strength in his legs.  Doc. 5-3 at 49–50.

Hyatt testified further that he has been a smoker for most of his life, has been diagnosed with COPD, and has difficulty breathing.  Doc. 5-3 at 50.  Hyatt testified that he gets tired easily, and that he experiences tightness in his chest and shortness of breath.  Doc. 5-3 at 50–51.

Hyatt testified that after his accident he began having problems with his kidneys and difficulty urinating.  Doc. 5-3 at 52–53.  Hyatt testified that he struggles with insomnia and fatigue.  Doc. 5-3 at 53.

Hyatt also testified that he experiences dizziness and confusion as side effects of his blood pressure medication.  Doc. 5-3 at 54.  Hyatt testified that he also experiences headaches, but that he is not sure if the headaches are caused by his medication or by his blood pressure.  Doc. 5-3 at 54.

Hyatt testified further that he cannot lift anything anymore, but that he tries to walk slowly for exercise.  Doc. 5-3 at 56–57.  Hyatt testified that he does not take pain medication, and at the hearing he rated his pain as a 9 out of 10.  Doc. 5-3 at 57.

Hyatt testified that he has memory issues and only sleeps "about four hours at a time," but Hyatt was unsure if his memory and sleep problems were attributable to his accident.  Doc. 5-3 at 58.

Hyatt also testified that he lives alone in a camper and is able to drive for 10 or 15 minutes at a time. Doc. 5-3 at 60–62. Hyatt testified that he can stand for about 15 minutes, sit for 10 to 15 minutes, and walk for 10 to 15 minutes at a time. Doc. 5-3 at 62–63. When asked if he could squat or bend over and then stand back up, Hyatt testified that he could not. Doc. 5-3 at 63. Hyatt also testified that he has difficulty climbing steps and takes advantage of handicap ramps when available. Doc. 5-3 at 63–64. Hyatt testified that he cannot climb a rope, cannot push a grocery buggy, and the heaviest item he can lift is a gallon of milk. Doc. 5-3 at 64.

Hyatt testified further that he smokes a pack of cigarettes per day when he has cigarettes available, and that he has not been given any lifting restrictions by a doctor. Doc. 5-3 at 66.

Vocational Expert (VE) Terrilyn Battle testified that a hypothetical individual with Hyatt's age, education, work experience, and the limitations posed by the ALJ could perform jobs that exist in significant numbers in the national economy. Doc. 10-3 at 67–76.

### C.    ALJ decision

On July 28, 2023, the ALJ entered an unfavorable decision. Doc. 5-3 at 18–28. In the decision, the ALJ concluded that Hyatt "has not been under a disability within the meaning of the Social Security Act since May 19, 2021, the date the application was filed." Doc. 5-3 at 19, 28.

The ALJ applied the five-part sequential test for disability (*see* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Winschel*, 631 F.3d at 1178). Doc. 5-3 at 19–20. The ALJ found that Hyatt has not engaged in substantial gainful activity since May 19, 2021. Doc. 5-3 at 20. The ALJ found that Hyatt has severe impairments of chronic obstructive pulmonary disease and arthralgias. Doc. 5-3 at 20. The ALJ also found that Hyatt has the non-severe impairments of hypertension, which "has been conservatively managed and has not demonstrated any significant medically related deficits," and pathologic fractures (ribs), which "healed without incidence." Doc. 5-3 at 20–21.

As to Hyatt's medically determinable mental impairments, the ALJ found that Hyatt's bipolar disorder and depression "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." Doc. 5-3 at 21. The ALJ found that Hyatt has no limitation in understanding, remembering, or applying information. While Hyatt reported difficulties with his memory, the ALJ found that Hyatt's treatment notes do not show that he reported memory difficulties to his providers, and during the hearing Hyatt was able to respond appropriately to questions "without observed difficulty." Doc. 5-3 at 21. As to interacting with others, the ALJ found that Hyatt has no limitations and reported no difficulties. Doc. 5-3 at 21. The ALJ also found that Hyatt has no limitations with concentrating, persisting, or maintaining pace. Doc. 5-3 at 21.

While Hyatt reported difficulty with concentration and completing tasks, the ALJ found that Hyatt reported the ability to drive, watch television, pay bills, prepare meals, and complete some household chores.  Doc. 5-3 at 21.  As to adapting or managing oneself, the ALJ found that Hyatt had no limitation, as there was no mention of inappropriate grooming or hygiene, and Hyatt's reports show that he presented as alert or oriented.  Doc. 5-3 at 21.

While Hyatt reported experiencing constant headaches and suffering from hernias, the ALJ found that treatment notes "fail to show any mention of headaches and examinations in the record show no masses noted in the abdomen."  Doc. 5-3 at 22.

The ALJ found that Hyatt did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the applicable Social Security regulations.  Doc. 5-3 at 22–23.

The ALJ then determined Hyatt's residual functional capacity (RFC), finding that Hyatt could "perform medium work" as defined in the regulations, except that he could frequently stoop, crouch, kneel, and crawl; should perform no climbing of ladders, ropes, scaffolds, or stairs; should avoid unprotected heights and operation of hazardous machinery; and should have no concentrated exposure to pulmonary irritants.  Doc. 5-3 at 23.

In assessing Hyatt's RFC and the extent to which his symptoms limited his

function, the ALJ stated that the ALJ "must follow" the required "two-step process": (1) "determine[] whether there is an underlying medically determinable physical or mental impairment[] . . . that could reasonably be expected to produce the claimant's pain or other symptoms"; and (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."  Doc. 5-3 at 23.  The ALJ also stated that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities."  Doc. 5-3 at 23.

In finding Hyatt's RFC, the ALJ considered information from Hyatt's medical records and hearing testimony regarding the limitations from his impairments, including testimony that Hyatt "stopped working after being injured on the job" and that Hyatt reported that "he broke his back and had to have his spleen removed." Doc. 5-3 at 23.  The ALJ considered Hyatt's testimony that, "since his injury, he experiences pain in his lower back and both sides of his rib," which "affects his ability to walk and bend."  Doc. 5-3 at 23.  The ALJ also considered Hyatt's testimony that he experiences "numbness down both legs, swelling and knots in his stomach, which he thinks are hernias," and that he experiences "constant headaches, tingling in his ankles, and breathing issues due to chronic obstructive pulmonary

disease (COPD)." Doc. 5-3 at 23. The ALJ considered Hyatt's testimony that he "could drive about fifteen minutes, stand fifteen minutes and walk ten to fifteen minutes," and that he was "unable to bend or climb stairs" but could "lift a gallon of milk on a regular basis." Doc. 5-3 at 24.

After considering the record and subjective allegations, the ALJ found that Hyatt "could perform medium work," and that Hyatt's "statements concerning the intensity, persistence and limiting effects of his impairments are not entirely consistent with the medical evidence and other evidence in the record." Doc. 5-3 at 24.

The ALJ found that, while Hyatt's treatment records "confirm traumatic injury to the thoracic/abdominal area with multiple rib fractures, necessitating removal of the spleen along with other injuries, records do not show a 'broken back.'" Doc. 5-3 at 24. The ALJ found that Hyatt's "follow-up examinations denote normal ranges of motion in both the cervical and lumbar spines." Doc. 5-3 at 24. The ALJ found that, while Hyatt "has demonstrated a slowed gait, the gait was still regarded as normal." Doc. 5-3 at 24. The ALJ also found that "a consultative examination did show a slight decrease in muscle strength at four out of five in the bilateral upper and lower extremities, as well as difficulty getting on and off the examination table and in squatting and rising," but that these findings "are not disabling." Doc. 5-3 at 24.

The ALJ summarized the evidence underlying the ALJ's decision, finding that Hyatt was hospitalized "between March 30 through April 14, 2021, after sustaining a crush injury between an engine block and a fork lift." Doc. 5-3 at 24. The ALJ found that the "primary diagnosis was multiple traumatic injuries, including blunt thoracoabdominal traumatic injuries and right hip/flank hematoma." Doc. 5-3 at 24. The ALJ found that a "chest CT scan showed mild atherosclerotic disease, mild upper lobe predominant centrilobular and para-septal emphysema, but no pulmonary contusions or lacerations as well as multiple rib fractures on the right and left." Doc. 5-3 at 24.

The ALJ found that Hyatt was readmitted to the hospital between April 26 and May 7, 2021, "due to increased output of serosanguineous drainage from the IR splenic drain" after Hyatt "had previously undergone a splenectomy." Doc. 5-3 at 24.

The ALJ also found that Hyatt sought treatment through a primary care visit on July 8, 2021, and "review of systems was negative except for complaints of arthralgias, back pain, and myalgias." Doc. 5-3 at 24. The ALJ found that at this visit an "[e]xamination of the musculoskeletal system showed swelling, tenderness, and signs of injury, but there was normal range of motion in the cervical spine with rigidity." Doc. 5-3 at 24.

The ALJ found further that Hyatt underwent a physical consultative

examination on November 20, 2021, which "fails to provide support for the claimant's allegations of disabling functional limitations."  At this examination, the ALJ found that "there were complaints of paraspinal muscle tenderness to palpation and muscle strength was noted to be slightly reduced at four out of five in the bilateral lower and upper extremities."  Doc. 5-3 at 25.  The ALJ also found that Hyatt's "bilateral grip strength was normal at five out of five," and that Hyatt "demonstrated a slow, labored gait, but required no assistive device."  Doc. 5-3 at 25.  The ALJ found that Hyatt "had difficulty getting off and on the examination table," "was unable to walk on his heels or toes and had difficulty squatting and rising," and had "normal range of motion in the cervical and lumbar spines" and "in the shoulders, hips, knees, and ankles."  Doc. 5-3 at 25.

The ALJ found that Hyatt was seen for a follow-up appointment and for prescription refills on March 10, 2022.  The ALJ found that at this visit Hyatt "complained of back pain" and "reported belly pain with hernia."  Doc. 5-3 at 25. The ALJ found that "review of systems was positive for shortness of breath, chest pain and palpitations, abdominal distention, and pain, arthralgias, back pain, and joint swelling."  Doc. 5-3 at 25.  The ALJ found that there was "normal range of motion in the musculoskeletal system including cervical back," "no mention of complaints of tenderness to palpation or complaints of pain with range of motion," and "no hernia was noted on examination."  Doc. 5-3 at 25.

The ALJ also found that at a follow-up appointment on June 26, 2022, Hyatt "reported that he felt good but ran out of medication, so his blood pressure was elevated on this occasion." Doc. 5-3 at 25. The ALJ found that "[r]eview of all other systems was negative," and that Hyatt's "musculoskeletal evaluation revealed normal range of motion." Doc. 5-3 at 25.

The ALJ considered evidence that on March 22, 2023, Hyatt presented with complaints of chest pain, "which he described as dull and achy lasting five to ten minutes occurring about three times over the past three to four days." Doc. 5-3 at 25. The ALJ found that at that visit Hyatt "reported he was smoking about a pack of cigarettes a day." Doc. 5-3 at 25. The ALJ found that Hyatt's "heart demonstrated regular rate and rhythm," and that an "EKG was normal." Doc. 5-3 at 25.

The ALJ went on to find that "[a]n overall assessment of the objective clinical reports does not corroborate the degree of pain or limitations maintained to the extent that claimant can perform work consistent with this assigned residual functional capacity." Doc. 5-3 at 26.

The ALJ also found that the RFC determination was "supported by the entire record." Doc. 5-3 at 26.

The ALJ then found that Hyatt "can perform his past relevant work as a laborer, stores." Doc. 5-3 at 26.

After considering Hyatt's age, education, work experience, RFC, and the

testimony of the VE, the ALJ found that Hyatt could perform jobs that exist in significant numbers in the national economy.  Doc. 5-3 at 76.  Consequently, the ALJ found that Hyatt had "not been under a disability, as defined in the Social Security Act, since May 19, 2021, the date the application was filed."  Doc. 5-3 at 28.

## DISCUSSION

Having carefully considered the record and briefing, the court concludes that the ALJ's decision was supported by substantial evidence and based on proper legal standards.  Hyatt argues in his brief that the ALJ "failed to articulate valid reasons for not fully crediting the claimant's subjective testimony that he can no longer perform medium work, and there is no medical evidence adequate to support the ALJ's conclusion he can do so."  Doc. 14 at 15.  But the ALJ properly assessed Hyatt's subjective testimony regarding his impairments and associated symptoms, as the ALJ's decision was based on the multi-part "pain standard," and substantial evidence supports the ALJ's decision not to fully credit Hyatt's subjective testimony regarding his symptoms.

## I.    The ALJ's decision properly was based on the multi-part "pain standard."

As an initial matter, the ALJ's decision properly was based on the multi-part "pain standard."  When a claimant attempts to establish disability through his own testimony concerning pain or other subjective symptoms, the multi-step "pain

standard" applies.  That "pain standard" requires (1) "evidence of an underlying medical condition," and (2) either "objective medical evidence confirming the severity of the alleged pain" resulting from the condition, or that "the objectively determined medical condition can reasonably be expected to give rise to" the alleged symptoms.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Raper v. Commissioner of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024); 20 C.F.R. § 416.929 (standards for evaluating pain and other symptoms).

Then, according to both caselaw and the applicable regulations, an ALJ "will consider [a claimant's] statements about the intensity, persistence, and limiting effects of [his] symptoms," and "evaluate [those] statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether [the claimant is] disabled."  20 C.F.R. § 416.929(c)(4); *see Hargress v. Social Sec. Admin., Comm'r*, 883 F.3d 1302, 1307 (11th Cir. 2018).

Here, in analyzing Hyatt's RFC, the ALJ stated that the ALJ "must follow a two-step process":  (1) "determine[] whether there is an underlying medically determinable physical or mental impairment[] . . . that could reasonably be expected to produce the claimant's pain or other symptoms"; and (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."  Doc. 5-3 at 23. According to the ALJ, where the claimant's statements about the intensity,

persistence, or limiting effects of symptoms were not substantiated by objective medical evidence, the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities."  Doc. 5-3 at 23.

The ALJ then applied the two-part test and found first that Hyatt's medically determinable impairments, including his COPD and his work-related crush injuries to his back and spleen, could reasonably be expected to cause the alleged symptoms. Doc. 5-3 at 23–24.  The ALJ then found second that Hyatt's "statements concerning the intensity, persistence, and limiting effects of his impairments are not entirely consistent with the medical evidence and other evidence in the record."  Doc. 5-3 at 24.  Thus, the ALJ's decision was based on the proper legal standards.

## II. Substantial evidence supports the ALJ's decision to partially discredit Hyatt's subjective testimony regarding his impairments and associated symptoms.

Furthermore, substantial evidence supports the ALJ's decision not to fully credit Hyatt's subjective testimony regarding his impairments and associated pain and symptoms.

### A. The Eleventh Circuit requires that an ALJ must articulate explicit and adequate reasons for discrediting a claimant's subjective testimony.

Under controlling Eleventh Circuit law, an ALJ must articulate explicit and adequate reasons for discrediting a claimant's subjective testimony. *Wilson*, 284 F.3d at 1225.  A claimant can establish that he is disabled through his "own

22

testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

An ALJ "will not reject [the claimant's] statements about the intensity and persistence of [his] pain or other symptoms or about the effect [those] symptoms have" on the claimant's ability to work "solely because the available objective medical evidence does not substantiate [those] statements."    20 C.F.R. § 416.929(c)(2).

So, when an ALJ evaluates a claimant's subjective testimony regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ must consider all of the evidence, objective and subjective.  20 C.F.R. § 416.929.  Among other things, the ALJ considers the nature of the claimant's pain and other symptoms, his precipitating and aggravating factors, his daily activities, the type, dosage, and effects of his medications, and treatments or measures that he has to relieve the symptoms.  *See* 20 C.F.R. § 416.929(c)(3).

Moreover, the Eleventh Circuit has been clear about what an ALJ must do, if the ALJ decides to discredit a claimant's subjective testimony "about the intensity, persistence, and limiting effects of [his] symptoms."  *See* 20 C.F.R. § 416.929(c)(4).  If the ALJ decides not to credit a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

"A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see Mitchell v. Commissioner of Soc. Sec.*, 771 F.3d 780, 792 (11th Cir. 2014) (similar). "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable . . . [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1210 (quotation marks and alterations omitted).[1]  "The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Commissioner of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

**B.    The ALJ properly explained the decision not to fully credit Hyatt's subjective testimony regarding his symptoms, and substantial evidence supports that decision.**

The ALJ properly explained the decision to partially discredit Hyatt's

---

[1] The Social Security regulations no longer use the term "credibility," and have shifted the focus away from assessing an individual's "overall character and truthfulness"; instead, the regulations now focus on "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and[,] given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Hargress*, 883 F.3d at 1308 (quoting Social Security Ruling 16-3p, 81 Fed. Reg. 14166, 14167, 14171 (March 9, 2016)).  But, generally speaking, a broad assessment of "credibility" still can apply where the ALJ assesses a claimant's subjective complaints about symptoms and consistency with the record. *Id.* at 1308 n.3.

subjective testimony regarding his pain and symptoms, and substantial evidence supports the ALJ's decision.

In his brief, Hyatt argues that, while there may be substantial record evidence to support a residual functional capacity to perform light work, the record evidence does not support a finding that Hyatt can perform medium work.[2]  Doc. 14 at 14–15.  Hyatt argues that the ALJ "has failed to articulate valid reasons for not fully crediting the claimant's subjective testimony that he can no longer perform medium work, and there is no medical evidence adequate to support the ALJ's conclusion he can do so."  Doc. 14 at 15.

But the ALJ considered the record as a whole, and substantial evidence supports both the ALJ's finding that Hyatt's testimony was not entirely consistent with the record evidence and the ALJ's RFC finding of medium work with postural and environmental limitations.

The ALJ made an explicit finding that Hyatt's "statements concerning the intensity, persistence and limiting effects of his impairments are not entirely consistent with the medical evidence and other evidence in the record."  Doc. 5-3 at 24.  The ALJ provided a detailed analysis of the record medical evidence regarding Hyatt's COPD, fork lift injuries, and hypertension, taking into consideration Hyatt's

---

[2] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).

treatment records and the consultative examination by Dr. Tanael. Doc. 5-3 at 25–26. The ALJ then found that an "overall assessment of the objective, clinical reports does not corroborate the degree of pain or limitations maintained to the extent that claimant can perform work consistent with his assigned residual functional capacity." Doc. 5-3 at 26.

In arriving at that conclusion, the ALJ considered all of the record evidence. As the ALJ found, the RFC determination was "supported by the entire record." Doc. 5-3 at 26. In finding Hyatt's RFC (and citing 20 C.F.R. § 416.929 as well as Social Security Ruling 16-3p), the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and considered any medical opinions and prior administrative findings. Doc. 5-3 at 23; *see* Doc. 5-3 at 26. In the decision, the ALJ included information based on both objective and subjective evidence that called into doubt Hyatt's subjective testimony about the intensity, persistence, and limiting effects of his symptoms. *See* 20 C.F.R. § 416.929.

The ALJ's decision shows that, in determining Hyatt's RFC and finding that Hyatt was not disabled, the ALJ considered Hyatt's testimony, including testimony about "pain in his lower back and both sides of his rib," "numbness down both legs," "swelling and knots in his stomach," "constant headaches," "tingling in his ankles," and "breathing issues due to chronic obstructive pulmonary disease (COPD)." Doc.

5-3 at 23–24.  The ALJ also considered Hyatt's testimony that he "experiences insomnia, dizziness, memory issues, and confusion," and that Hyatt "estimated that he could drive about fifteen minutes, stand fifteen minutes and walk ten to fifteen minutes" and was able "to lift a gallon of milk on a regular basis."  Doc. 5-3 at 23–24.

The ALJ also summarized the record, reviewing Hyatt's normal and abnormal medical findings.  The ALJ found that, while treatment records confirmed traumatic injury to Hyatt's thoracic/abdominal area, the records did not show a "broken back."  Doc. 5-3 at 24.  Rather, follow-up examinations "denote normal ranges of motion in both the cervical and lumbar spines."  Doc. 5-3 at 24.  The ALJ also found that while Hyatt "has demonstrated a slowed gait, the gait was still regarded as normal."  Doc. 5-3 at 24.  The ALJ found that a "consultative examination did show a slight decrease in muscle strength at four out of five in the bilateral upper and lower extremities, as well as difficulty getting on and off the examination table and in squatting and rising."  Doc. 5-3 at 24.  But the ALJ then found that the "findings from the consultative examination . . . are not disabling."  Doc. 5-3 at 24.

The ALJ found that Hyatt's primary care visits from July 8, 2021, March 10, 2022, and June 16, 2022, all showed a normal range of motion in the cervical back.  Doc. 5-3 at 24–25.

The ALJ also considered Dr. Tanael's assessment that, although Hyatt was

unable to walk on his heels or toes and had difficulty getting on and off the examination table and in squatting and rising, Hyatt had a normal range of motion in the cervical and lumbar spines, shoulders, hips, knees, and ankles. Doc. 5-3 at 25.

The environmental and postural limitations placed on Hyatt's RFC to perform medium work show that the ALJ took Hyatt's subjective testimony into account when finding his RFC. Hyatt testified that he "experiences insomnia, dizziness, memory issues, and confusion." Doc. 5-3 at 23. In limiting Hyatt's RFC, the ALJ found that Hyatt "should perform no climbing of ladders, ropes, scaffold or stairs," and that he "should avoid unprotected heights [and] operation of hazardous machinery." Doc. 5-3 at 23.

Further, "[t]he residual functional capacity is an assessment based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d 12 1440. And, according to Social Security Ruling 96-8P, "RFC is not the least an individual can do despite his or her limitations or restrictions, but the *most*." 1996 WL 374184 at *2 (July 2, 1996) (emphasis in original).

In this regard, the ALJ's decision considered information based on both objective and subjective evidence, accounting for evidence supporting Hyatt's testimony, while also clearly identifying evidence calling into doubt Hyatt's subjective testimony about the intensity, persistence, and limiting effects of his

symptoms. *See* 20 C.F.R. § 416.929.

Thus, the ALJ's decision and RFC finding included the necessary "explicit and adequate reasons" for partially discrediting Hyatt's subjective testimony about his symptoms. *Wilson*, 284 F.3d at 1225. The ALJ "considered [Hyatt's] medical condition as a whole," and the decision was not just a "broad rejection" of Hyatt's subjective testimony. *Dyer*, 395 F.3d at 1210.

Substantial evidence requires "such relevant evidence as a reasonable person would accept as adequate to support a conclusion" (*Crawford*, 363 F.3d at 1158), and the court must affirm an ALJ's factual findings if they are supported by substantial evidence, "[e]ven if the evidence preponderates against the Commissioner's findings" (*Crawford*, 363 F.3d at 1158–59 (quoting *Martin*, 894 F.2d at 1529)). This court cannot reweigh the evidence (*see Winschel*, 631 F.3d at 1178), and there is sufficient evidence in the record to support the ALJ's findings that Hyatt's testimony regarding his symptoms was not consistent with the record as a whole and that Hyatt was able to perform medium work. Accordingly, substantial evidence supports the ALJ's decision. The ALJ clearly articulated a credibility finding that was supported by substantial evidence, and the court cannot disturb that finding. *See Foote*, 67 F.3d at 1562.

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C § 405(g)), the

Commissioner's decision is **AFFIRMED**.   The court separately will enter final judgment.

      **DONE** and **ORDERED** this February 13, 2025.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE